UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BUNGE-SCF GRAIN, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:23-cv-00734-SRC |
| | ) |
| PAT WEBSTER, | ) |
| | ) |
|     Defendant. | ) |

**<u>Memorandum and Order</u>**

Some races to the courthouse involve close calls, with respective filings separated by mere days, hours, or even minutes. In this case, the race—if one can call it that and remain faithful to the definition of "race"—involves two cases filed not minutes, hours, or days apart, but months apart. More specifically, six months. Finding that the two cases involve parallel litigation, the Court applies the first-to-file rule and transfers this case to the Central District of Illinois.

**I.    Background**

Plaintiff Bunge-SCF Grain, LLC owns and operates a river grain terminal along the Mississippi River and two grain elevators in Illinois. Doc. 1 at ¶ 9. In this operation, it purchases various agricultural commodities from farmers. *Id*. at ¶ 10. Defendant Pat Webster is one such farmer. Doc. 16-1 at ¶¶ 2–3. In 2021, Webster and Bunge entered into six contracts for the sale of soybeans and corn. Doc. 1 at ¶ 13; *see also* docs. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6. Bunge alleges Webster only partially delivered on some of the contracts, giving rise to a dispute. *Id*. at ¶ 30; doc. 16-1 at ¶ 4.

In June 2022, relying upon the National Grain and Feed Association trade rules, Bunge cancelled the six contracts. Doc. 1 at ¶¶ 38, 40. Further applying the trade rules, Bunge calculated the amount of damages for the six cancelled contracts. *Id*. at ¶ 39. Then the parties entered into settlement negotiations. Doc. 34-1 at 12–13. In December 2022, the parties discussed a settlement agreement via email. Doc. 34-1 at 30–33. And on December 29, 2022, Bunge's associate general counsel sent the following email to Webster's attorney:

> I will review my file and forward the signed document you requested if I have one.
>
> In the meantime, please provide your response, if any, to the settlement agreement and promissory note.
>
> Bunge has been patient over the last several months but we expect Mr. Webster to honor the negotiated settlement agreement, return signed documents and make the initial installment promptly.
>
> Bunge reserves all of its rights with regard to this matter.

*Id*. at 30. Six days later, on January 4, 2023, Webster sued Bunge in Illinois state court. Doc. 34 at 6. With court closures for the holidays, this amounted to two business days. *Id*. ("the Pike County Circuit Court was closed on Friday, December 30, 2022[,] and Monday, January 2, 2023[,] for the New Year holiday"); Fed. R. Civ. P. 6(a)(6). About two weeks later, Webster served Bunge. Doc. 33 at ¶ 2. Shortly after, Bunge removed the case to the Central District of Illinois. Doc. 16 at ¶¶ 7–8.

On June 2, 2023, six months after Webster sued Bunge, Bunge sued Webster in this Court. *See* doc. 1. In filing this suit, Bunge stated that "this cause is related, but is not substantially equivalent to any previously filed complaint." Doc. 1-9. In his first appearance in this case, Webster disputed Bunge's assertion, "the disclosure statement made by Bunge . . . is untrue for a number of reasons," doc. 16-1 at ¶ 26, and he moved to dismiss the case for lack of personal jurisdiction, doc. 16. While Webster did not formally move for transfer, he questioned

this Court's ability to hear this case and insisted the case should proceed in the Central District of Illinois:

> The Defendant in the Missouri case Pat Webster ask [sic] that the United States District Court [for the] Eastern District of Missouri, Eastern Division dismiss the Plaintiff Bunge-SCF Grain, LLC. [sic] complaint being Case No. 04:23-cv-00734 or in the alternative require Venue of the Missouri complaint 04:23-cv-00734 to be removed to be part of Case No. 03:23-cv-03026 presently proceeding in the Central District of Illinois, Springfield Division.

Doc. 16-1 at ¶ 62. With this dispute, the Court ordered the parties to fully brief the issue of transfer. Doc. 32. The Court required the parties to address (1) the similarity of the cases, (2) relevant factors for transfer, and (3) the first-to-file rule. *Id*. at 2.

The parties remain in disagreement. Bunge insists the Court should not transfer the case. Doc. 34. But Webster asks the Court to either dismiss this case or transfer it to the Central District of Illinois. Doc. 33 at ¶ 36.

## II. Analysis

"To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for the purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993) (citing *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)); *see also Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) ("Generally, the doctrine of federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir. 1982)).

Parallel litigation exists when "substantially the same parties litigate substantially the same issues in different forums." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958,

3

968 (8th Cir. 2013) (citation omitted). The rule "'is not intended to be rigid, mechanical, or inflexible,' . . . but is to be applied in a manner best serving the interests of justice." *Goodyear*, 920 F.2d at 488 (quoting *Orthmann*, 765 F.2d at 121). The prevailing standard is that "in the absence of compelling circumstances the first-filed rule should apply." *Nw. Airlines*, 989 F.2d at 1005 (citation omitted).

The parties do not dispute the similarity of the parties, but they dispute the similarity of the cases. Further, Bunge contends that compelling circumstances exist that warrant discounting the traditional rule. The Court addresses each issue separately. First, the parties in the two cases are the same. In Illinois, it is Webster versus Bunge, and here, it is Bunge versus Webster. Doc. 33 at ¶¶ 1, 13.

Second, the cases are "parallel" since they share one critical issue in common: the validity and enforceability of six contracts. Bunge and Webster contest this point. *Compare* doc. 34 at 4 ("While Mr. Webster cites to the contracts and seeks relief he hopes can veil his liability, the cases are not the same.") *with* doc. 33 at ¶ 23 ("The similarities claimed by the filing of the Plaintiff . . . are more than similarities, they are in fact the same case but only the application of a different standard of law."). Bunge misconstrues Webster's complaint when it claims he merely "cites to" the contracts. Doc. 34 at 4. Instead, Webster, in the Illinois suit, takes issue with the contracts' terms and conditions, doc. 34-1 at 16–20, 25–26, and asks the Central District of Illinois to find the contracts "void" and "invalid as a result of [their] language," *id*. at 26. In this Court, Bunge asks for these same contracts to be enforced against Webster. *See generally* doc. 1. Thus, the cases mirror each other and turn on the validity and enforceability of six contracts.

4

Further, the descriptions for parallel suits "are necessarily imprecise given the wide array of issues—and varying articulations of similar issues—that may arise in arguably related litigation." *Lexington Ins.*, 721 F.3d at 968. The Court "may therefore consider the likelihood that [one] court will resolve the issues later presented in [another] court, and [it] may also consider the likely completeness of any such . . . resolution when assessing whether the earlier-filed actions involve 'substantially the same issues.'" *Id.* (quoting *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005)). Admittedly, Webster brings more claims in his suit than Bunge does. *Compare* docs. 34-1, 34-2 *with* doc. 1. But still, the dueling lawsuits present a serious risk of one court resolving an issue presented to the other court. As such, the Court finds that these cases are parallel.

Further, the cases present a serious risk of inconsistent rulings. *See Nw. Airlines*, 989 F.2d at 1006 (identifying the avoidance of conflicting rulings as a purpose for the first-to-file rule). Bunge's claims that Webster's suit is "meritless" and that it "has had every expectation Mr. Webster's Illinois claims will ultimately be dismissed," doc. 34 at 5, do not assuage the Court's concerns. Neither Bunge nor this Court may determine the validity of Webster's suit, and neither knows whether it will be dismissed.

Additionally, transferring this case also comports with the second purpose of the first-to-file rule: conserving judicial resources. *See Nw. Airlines*, 989 F.2d at 1006; *see also Pacesetter Sys.*, 678 F.2d at 96 (applying first-to-file rule and stating, "permitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations . . . and enforceability was clear."). Although Bunge claims that "[t]here are no judicial efficiencies to gain or interests of justice to forward by imposing the first-to-file rule under these circumstances," doc. 34 at 5, the Court disagrees. In this case, both parties present as

5

exhibits filings from the Illinois case. *See* docs. 16-2, 16-3, 34-1, 34-2. With this, the parties ask the two courts to review the exact same documents. Efficiency calls for one court to review the documents, and to resolve Webster and Bunge's disputes.

Third, Bunge's contention that compelling circumstances—or "red flags"—exist here is unpersuasive. *See* doc. 34 at 5. Bunge identifies the purported compelling circumstances as Webster's "race to the courthouse." *Id*. This applies when "the 'first' suit was filed after the other party gave notice of its intention to sue." *Boatmen's First Nat. Bank of Kan. City v. Kansas Pub. Emps. Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995). But this does not apply if the "notice" "gave no indication that a lawsuit was imminent, or that [plaintiff] was doing anything more than blowing smoke about a potential lawsuit." *Nw. Airlines,* 989 F.2d at 1007.

Unlike the cases Bunge cites to, here, Bunge failed to indicate that a lawsuit was imminent; so Webster's first filing does not create compelling circumstances. The facts here diverge from the facts of Bunge's citations in two substantial ways: (1) Bunge did not explicitly threaten to sue, and (2) Bunge then waited six months to sue—double the time it took Nellie Bly to circumnavigate the world via train, steamship, rickshaw, horse, and donkey in the year 1889. Maris Fessenden, *Nellie Bly's Record-Breaking Trip Around the World Was, to Her Surprise, a Race*, *Smithsonian Mag.* (Jan. 25, 2016), https://www.smithsonianmag.com/smart-news/nellie-blys-record-breaking-trip-around-world-was-to-her-surprise-race-180957910/ [https://perma.cc/T53V-K6NL].

In all the cases Bunge cites, the second filer explicitly threatened to sue the first filer if the latter did not respond by a certain time. *See Eveready Battery Co. v. L.P.I. Consumer Prods., Inc.*, 464 F. Supp. 2d 887, 888 (E.D. Mo. 2006) (noting that second filer warned, "we will instruct our Associate Counsel to pursue the matter in the Federal Courts" and gave first filer

seven days to respond to subsequent correspondence); *Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 418 (8th Cir. 1999) ("The letter stated that, unless Anheuser were to respond within five days, Supreme had authorized its attorneys to take legal action."); *Boatmen's*, 57 F.3d at 639 (noting that the second filer sent a draft complaint and stated it would sue if the first filer did not respond in 12 days); *Harbinger, LLC v. The Cincinnati Ins. Co.*, No. 20-00968-CV-W-BP, 2021 WL 4228634, at *1 (W.D. Mo. Apr. 7, 2021) ("[Plaintiff] sent Defendant a letter indicating that Plaintiff would file suit if Defendant did not reconsider its decision to deny coverage; the letter included a draft of the Complaint. . . . [And it] requested that Defendant respond [in five days]."); *G.S. Robins & Co. v. Alexander Chem. Corp.*, No. 4:10-CV-2245-SNLJ, 2011 WL 1431324, at *3 (E.D. Mo. Apr. 14, 2011) ("[I]f within 15 days . . . [first filer does not take action], we will be forced to file the necessary cause of action to enforce our rights.").

  Here, Bunge shows that it requested Webster respond to the settlement agreement and make payment. Doc. 34 at 5–6 (first citing doc. 34-1 at 12; then citing *id*. at 30–31); *see* doc. 34-1 at 30–31 (showing email chain between Bunge and Webster's attorney). But Bunge does not show it indicated a lawsuit was imminent. *See* doc. 34 at 5–6. The email chain referred to as Bunge's "demand for payment" ended on December 29, 2022. Doc. 34-1 at 30. Unlike the cases above, Bunge's final email on that day made no mention of a lawsuit. *Id.* While it did close with "Bunge reserves all of it rights with regard to this matter," *id.*, this does not amount to an indication of an imminent lawsuit. *See, e.g.*, *Nw. Airlines,* 989 F.2d at 1003, 1007 (finding the letter gave no indication of an imminent lawsuit when it mentioned only the possibility of a lawsuit). More like *Northwest Airlines*, the facts here fail to show a lawsuit was imminent and do not create compelling circumstances.

Further, Bunge's months-long wait to file this case provides further evidence that Bunge did not imminently intend to file a lawsuit. In *Northwest Airlines*, the second filer sued the first filer six weeks after the first suit and about four months after the second filer sent its letter mentioning a potential lawsuit. *Id.* at 1007. Because of this, the court stated, "one might infer that American's lawsuit was not truly contemplated until after Northwest had filed its action." *Id.* By contrast, in the cases cited by Bunge, the second filers sued more quickly. *See Eveready*, 464 F. Supp. 2d at 889 (noting second filer sued one month after first suit, but also four days *before* being served with first-filer's complaint); *Anheuser-Busch*, 167 F.3d at 418–19 (noting second filer sued five days after first suit); *G.S. Robins*, 2011 WL 1431324, at *3 (noting second filer sued about one month after first suit); *Harbinger*, 2021 WL 4228634, at *1–2 (noting second filer sued three days after first suit).

Although Webster sued Bunge soon after Bunge's final correspondence—six days, or two business days, later—the facts here align more with *Northwest Airlines* than Bunge's citations. *See* doc. 34 at 6. Bunge did not bring this case until about six months after Webster sued in Illinois and served Bunge. *See* doc. 1. This six-month period indicates that Bunge's lawsuit was not imminent. *See Nw. Airlines*, 989 F.2d at 1007. People of fewer means have accomplished far more remarkable feats in less time. As such, the Court finds the race-to-the-courthouse red flag does not apply here. No compelling circumstances exist here to overcome the first-to-file rule.

### III.    Conclusion

Accordingly, the Court orders the Clerk of Court to transfer this case in its entirety to the United States District for the Central District of Illinois. Further, the Court denies Webster's

8

[16] motion to dismiss as moot.  Finally, the Court denies, without prejudice, Bunge's [27] motion for expenses and attorneys' fees.

So ordered this 29th day of December 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE